MICHAEL HALLAHAN, Respondent, *v.* DANIEL HERBERT et al., Appellants.

A proceeding under and as prescribed by the mechanics' lien law of 1851 for the city and county of New York (chap. 513, Laws of 1851, amended by chap. 404, Laws of 1855) for the enforcement of a lien created under the provisions of said act, was not an action within the meaning of the Code (§ 2), but a special proceeding.

Accordingly *held*, that the provision of the Code (§ 111) directing that "every action must be prosecuted in the name of the real party in interest," etc., did not apply to such proceedings; but that, in case of an assignment by a lienor before the commencement thereof, they were properly prosecuted in his name for the benefit of the assignee.

Under said act, as amended in 1855, a personal judgment against a party personally liable for the amount found due was proper.

The filing of a notice of lien which had ceased to be operative for want of enforcement, was no bar to the enforcement of one subsequently filed and in no manner affected it.

(Argued January 14, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, affirming a judgment in favor of plaintiff, entered on the report of a referee, in a proceeding to enforce a lien on lands in the city of New York, under the act for the better security of mechanics and others erecting buildings and furnishing materials therefor, in the city and county of New York, passed July 11, 1851. (Chap. 513.) (Reported below, 11 Abb. Pr. [N. S.], 326.)

The facts, so far as they are material to the decision of the appeal, sufficiently appear in the opinion.

*Wm. Weston* for the appellants. Demarest not being the owner of the claim and lien when he commenced the suit, had no right of action. (Code, § 111; *Palmer* v. *Smedley*, 28 Barb., 468; *Garigue* v. *Loescher*, 3 Bos., 578, 584; *Davis* v. *Mayor of N. Y.*, 14 N. Y., 506, 526, 527; *Roberts* v. *Fowler*, 3 E. D. S., 632.) Plaintiff can have no greater

rights or power in continuing or prosecuting the action than Demarest had. (Code, § 121 ; *Terry* v. *Roberts*, 11 How. Pr., 65 ; *Davis* v. *May*, 14 N. Y., 506 ; Code, §§ 122, 172, 173 ; *Rogers* v. *Traders' Ins. Co.*, 6 Paige, 583 ; *Field* v. *Magher*, 5 id., 539 ; *Mills* v. *Hoag*, 7 id., 18.)

*W. McDermot* for the respondent. Defendants by appearing waived all defects in the notice. (*Mors* v. *Stanton*, 51 N. Y., 649 ; *McBride* v. *Crawford*, 1 E. D. S., 658 ; Code, § 429.)     The lien was not discharged by being marked " secured on appeal." (Laws 1851, chap. 513.)   Plaintiff is entitled to a personal judgment against Herbert and Ford. (Laws 1855, chap. 404, § 5.)

LOTT, Ch. C.   It appears by the report of the referee, to whom it had been referred to " hear and decide all the issues" on which the judgment herein was rendered, that one Jacob Demarest, on the 9th day of May, 1862, entered into an agreement, in writing, with the defendants Herbert and Ford, who were erecting buildings on certain lands, of which they were the equitable owners, in the city of New York, under a verbal contract of sale with their co-defendant, Cudlipp, who was the legal owner in fee thereof, to furnish them with all the blue stone that would be required therefor, and to perform the labor necessary in setting the same, according to certain specifications thereto annexed ; that he, in pursuance thereof, furnished materials and did work, for which he claimed that there was a balance due to him, on the 23d day of January, 1863, of $990, and that he, on that day, served, on the county clerk of New York, the necessary notice to create a lien on the interest of the said defendants Herbert and Ford, as such equitable owners, in the property, required by the act entitled "An act for the better security of mechanics and others erecting buildings and furnishing materials therefor, in the city and county of New York," passed July 11, 1851 (chap. 513), and the acts amendatory thereof. It further appears by the said report, that Demarest, on the

same day, after serving the said notice, assigned to the plaintiff, Michael Hallahan, the said contract, and all sums of money which were due, or might become due, and payable to him under it, or by virtue thereof; also the said lien and notice of claim, and all money due, or which might become due, and payable to him thereby, or under it; and, using the language of the referee, "that, afterward, about the 7th day of January, 1864 (and within one year after the filing of said notice of claim of lien last mentioned), a written notice, in pursuance of section 4 of said act of 1851, was given by said Demarest (signed by William McDermot, Esq., as his attorney at law therein), to said parties named in said claim of lien, the defendants in this action, requiring them to appear in the Court of Common Pleas in the city of New York, on the 2d day of February, 1864, and to submit to an accounting and settlement in such court of the amount claimed to be due for the labor and materials done and furnished by said Demarest, as aforesaid; a bill of particulars of which work and materials accompanied said notices; and on the 12th day of January, 1864, an affidavit that legal proceedings had been commenced to enforce said lien, was filed with said county clerk and entered upon his lien docket, according to the statute aforesaid."

It is then found by the referee, that Demarest died on the 29th day of January, 1864, and that, on the second day of February next thereafter, the defendants appeared, in pursuance of the said notice, before the said Court of Common Pleas, and, on motion of said W. McDermot, Esq., the said court made an order that the plaintiff in such proceeding serve, upon the defendants' attorney, a complaint therein, within twenty days thereafter, and that the defendants have twenty days to answer the same; that no further proceedings were had until the 30th day of August, 1864 (except the service of papers, etc., for the motion), when an order, after an appearance and opposition by the defendants, was made by the said court at a Special Term thereof, "that, said Michael Hallahan be substituted in the place of said Jacob Demarest,

deceased, and that this action be continued in the name of said Michael Hallahan as plaintiff, and that such plaintiff have ten days thereafter to serve a complaint therein." This order is stated, by the referee, to have been founded upon due proof by affidavit, before the court, made in behalf of said Hallahan, by said W. McDermot, as attorney of record for the lienor in said proceeding, that said claim had been assigned to him by said Demarest in his lifetime, and that said Demarest "had died, as aforesaid." It then is further found that, after the making of that order, "all the proceedings in this action have been continued in the names of said Michael Hallahan, as plaintiff, by the same attorney of record, and by said Herbert, Ford and Cudlipp, as defendants, by their attorney."

He also found that the sum of $960.67 had, about September 30th, 1862, on a settlement and accounting made and had between said Demarest and said Herbert and Ford, "concerning said contract and the doings of the respective parties under it," been found and agreed by them to be due said Demarest or his assigns; that no part of said sum (which had been assigned, as above stated, by Demarest in his lifetime to the plaintiff) had been at any time paid; and that the same, with interest from said date, amounted, at the date of his report, to the sum of $1,476.27. He thereupon found, as conclusions of law:

1st. That the said sum was due to Hallahan, the plaintiff, from the said defendants Herbert and Ford.

2d. That the said Demarest, by the service of said notice, served on the county clerk on the 23d day of January, 1863, as above stated, effected a valid lien upon the said lands and buildings to the extent of the right, title and interest of the said defendants Herbert and Ford, or either of them, existing on that day, for the said sum so found due on the 30th of September, 1863, as aforesaid, with interest thereon from that date.

3d. That the said lien was in full force, and by virtue of the assignment thereof to the plaintiff and the proceedings

to foreclose the same, as above stated, belonged, with all its incidents and advantages, to the said plaintiff.

4th. That the plaintiff was entitled to a sale of the property to the extent of the interest and rights of the said defendants Herbert and Ford, or either of them, on the 23d day of January, 1863, for the satisfaction of the amount so found due to him from them, according to the provisions of the said act.

5th. That the plaintiff was also entitled to a separate judgment against the defendants Herbert and Ford, for the sum so found due, with the costs of the proceedings.

It is also shown by the case, that when the plaintiff rested, the defendants moved to dismiss the complaint on the ground (among others), that it appeared from the proofs and papers that Demarest was not the owner of the claim and lien when he commenced his action; the motion was denied, and the defendants excepted.

That exception, and one of the same tenor, taken to the referee's report, present the most material questions on this appeal. It is based on section 111 of the Code, which declares that "every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 113." That section provides, "that an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute, may sue without joining with him the person for whose benefit the action is prosecuted;" and it declares that "a trustee of an express trust, within the meaning of this section, shall be construed to include a person with whom, or in whose name, a contract is made for the benefit of another." Another exception was made by the Code in 1862, but it has no application to the question under consideration. It will be seen that both of these sections refer to an "action." It is, therefore, important to inquire and ascertain what is the meaning of that term as there used, and a reference to other provisions of the Code will aid us. Section 1 enacts that " remedies in the courts of justice are divided into : 1. Actions, 2. Special proceedings." Section 2 then defines an action to

be " *an ordinary* proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offence; " and, section 3 enacts that " every other remedy is a special proceeding." Having now learned the meaning of the term " action," as thus defined, it becomes necessary further to ascertain whether the proceeding, as originally commenced by Demarest, was such an ordinary proceeding in a court of justice, as to be included within the said definition. The act under which it was instituted, and which was the only authority for the remedy, prescribes who are entitled to it, and what is necessary to be done by them to secure the lien thereby authorized to be acquired ; and provides, by section 4, that the party who has secured it may " enforce or bring to a close such lien, by serving or causing a notice to be served personally " on the owner or other party to be affected, " requiring him to appear in the Court of Common Pleas " * * * " either in person or by attorney, at a time certain, upon some day to be specified in such notice, not less than twenty days from the service thereof, and submit to an accounting and settlement in such court of the amount due or claimed to be due for the labor thus performed, or the materials furnished ; " and section 5 declares, that " at the time or within fifteen days after the service of such notice, a bill of particulars of the amount claimed to be due shall be served on such owner or his legal representatives, and also, a bill of particulars of any offset which may be claimed to the same, shall be served in like manner upon the laborer, contractor or person furnishing materials as the case may be." Section 7 then, as amended by chapter 404 of the Laws of 1855, provides what proceedings shall be had in case the said owner shall not appear in pursuance of the requirements of sections 4 and 5 for the enforcement of the lien ; and section 8 enacts that on the appearance of both parties, in pursuance of the above requirement, issue shall be joined upon the claims made and notice of set-off served, and the same may be noticed

for trial and put upon the calendar of said court by either party, and shall be governed, tried, and the judgment thereon enforced in all respects, in the same manner, as upon issues joined and judgments rendered in all other civil actions for the recovery of moneys in said court."

Are those such *ordinary* proceedings in a court of justice as are referred to, or intended, within the meaning of section 2, above cited? A reference to the provisions of the Code, then in force, for a correct answer to that question appears to be necessary. Section 69, as amended in 1849, after declaring that the distinction between actions at law and suits in equity and the forms of all such actions and suits theretofore existing were thereby abolished, further declared, that there should be in this State thereafter but one form of action for the enforcement or protection of private rights and the redress of private wrongs, which should be denominated a "civil action." It was then provided, by section 127, that civil actions in the courts of record of this State should be "commenced by the service of a summons;" sections 128 and 129 prescribed what such summons should contain, how it should be subscribed, and subsequent sections provided how it should be served; and, section 139 declared, that from the time of the service of the summons in a civil action, or the allowance of a provisional remedy, the court was deemed to have acquired jurisdiction, and to have control of all the subsequent proceedings, and that a voluntary appearance of a defendant was equivalent to personal service on him.

The different sections of the Code to which I have herein particularly referred were in force at the time the act in question was passed, and it appears to me clear, from the different modes of procedure prescribed by it as above mentioned, that the remedy given thereby to enforce the lien is not "an action" within the meaning of the Code, and was not intended to be, but that it is "a special proceeding" as thereby defined. That act, by its express provisions (§ 4), declared, as already shown, that "any contractor" might enforce such lien by the service of the notice therein provided; and as Demarest was con-

fessedly a contractor, within its meaning, there has been a compliance with the law in that respect, and his proceeding will be deemed to have been for the benefit of his assignee, Hallahan, with the same and like effect as an action at common law was formerly prosecuted in the name of the assignor of a chose in action for the benefit of his assignee thereof.

The facts on which the referee based his conclusion of law (the first, second, third and fourth conclusions of fact having been affirmed by the General Term) are not reviewable by us and fully warrant that conclusion, and, also, as I think, entitled the plaintiff to a separate judgment against the defendants, Herbert and Ford, for the sum found due from them to him. The object of the act of 1851, under which his proceedings were commenced, was to provide a contractor and other persons who had done work or furnished materials toward the erection of a building with a remedy, *in rem*, and I should have doubted whether the general declaration contained in the latter part of the seventh and eighth sections, that the judgments entered upon the established claims might be enforced in the court where the recovery was had, in the same manner as other judgments recovered in such court, would have authorized a recovery against a party personally liable for the amount established and found due against him ; yet I have reached the conclusion, after much consideration, that the amendatory act of 1855 (chap. 404) gives the plaintiff the right thereto. It, by section 1, provides that " whenever a judgment shall be rendered in favor of the claimant in any proceeding commenced under the act hereby amended, such judgment shall direct the sale of the interest of the owner, in the land and premises upon which the lien exists, to the extent of the right of such owner at the time of the filing of the notice of lien, in pursuance of said act," makes provision for the application of the proceeds of sale ; and it further provides, by section 5, " that when the proceedings are commenced by a person having a claim against the contractor with the owner, such contractor may be made a defendant with such owner, and judgment

may be rendered against the contractor for the amount which shall be found owing by him in addition to the judgment hereinbefore provided for against such owner, and the court may award costs against such of the parties as shall be just." The first section appears to have been enacted for the purpose of declaring the form and extent of the judgment, *in rem*, intended to be given by the original act, and the fifth section removes all doubt, which I otherwise would have' had, as to the right to enter a personal judgment against the contractor for a debt incurred by and due from him to the claimant. It is true that the terms used contemplate that the contractor and owner are different persons, but that is not a good or sufficient reason why the remedy thereby given against a contractor in such a case should not be extended to his creditor when he is himself the owner. His liability to the plaintiff in either relation is established, and the object as well as the clear intent of the section was to save the necessity of two actions, one for the enforcement of the lien against the land of the owner and another for the recovery of the debt from the party personally liable. That object and intention, so clearly expressed, are carried out by the judgment in this case, and there can be no doubt that the two statutes construed in connection authorized it.

It is proper to add that the propriety of making the order for the substitution of the present plaintiff in the place of Demarest, and for the continuance of the proceeding by him subsequently, is not involved in the present appeal; and we are clearly of the opinion that the notice of lien found by the referee to have been filed by Demarest, in November, 1862, previous to that enforced by the judgment herein, was no bar to such enforcement of the latter, and did not affect it in any manner. It was intended to reach the interest of the defendant Cudlipp, as owner of the fee, and it ceased to be operative by the failure of Demarest to prosecute the enforcement of it.

The other questions raised and argued by the appellants' counsel are of a minor character, and require no special

notice. It is sufficient to say, generally, that they have received proper examination and consideration, and fail to show any error by the referee in making his decision, and are, therefore, insufficient to justify a reversal of the judgment appealed from.

It must, consequently, be affirmed, with costs.

All concur.

Judgment affirmed.